# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

---

Leonard F. Joy
*Executive Director and
Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

July 8, 2010

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   **United States v. Ali El Rida, CR 08-555 (ARR)**

Your Honor:

　　　Mr. Ali El Rida pleaded guilty to trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a) and possessing counterfeit money orders in violation of 18 U.S.C. § 513(a). He is scheduled to be sentence on Friday, July 16, 2010 at 11:30 a.m.

　　　Mr. El Rida objects to the total offense level calculated in the presentence report (PSR). The Probation Department incorrectly considers certain conduct, prosecuted in 2006 in New York State court, as relevant conduct. This conduct is not relevant to the instant charges under USSG §1B1.3. Also, pursuant to USSG §3D1.2(d), both counts are consolidated into a single group. Without the relevant conduct and counting both counts as one group, Mr. El Rida is responsible for a loss of $59,040 and his final offense level is 10, with a corresponding sentencing range of 8-14 months in criminal history category II. The base offense level is 8, 6 levels are added for a loss of less than $70,000, a minor role adjustment leads to a 2 level reduction, and 2 levels are deducted for acceptance of responsibility.[1] Mr. El Rida also objects to portions of the PSR which do not affect the guideline calculation.

　　　Under the circumstances of this case and pursuant to the factors listed at 18 U.S.C. §3553(a), a sentence of probation is appropriate. Since his arrest, Mr. El Rida has become a more responsible person, employee, and father. He works several jobs and supports both his mother and child in Lebanon. The nature and circumstances of the offense, including his immediate acceptance of responsibility and the lack of actual loss also argue for a sentence of probation.

---

[1] PSR ¶9 indicates that Mr. El Rida was a minor participant in the counterfeit goods transaction; he concurs in that finding. The Probation Department, however, fails to include this 2 level reduction in its guideline calculation. Because the counts are grouped and Mr. El Rida does not warrant a minor role reduction in regards to the counterfeit money order count, the Court may apply the 2 level reduction, or not, in its discretion.

### Objections to the PSR

PSR ¶ 40 indicates that Mr. El Rida purchased counterfeit sneakers with stolen money orders. While Mr. El Rida pleaded guilty to trademark counterfeiting in that case, and did possess the sneakers in rented storage, he played no part in purchasing the sneakers and is unaware whether they were purchased with stolen money orders.

PSR ¶ 63 states that Mr. El Rida works at the Zietuna Grill and Café as a chef. This employment ceased in March of this year. Mr. El Rida had, at one time, been a full time employee at this restaurant. Upon the return of the original chef, however, Mr. El Rida's position became that of a relief chef and his hours were substantially reduced. The approximately $800 per month Mr. El Rida reported during the presentence interview was the amount he was earning at that time, February, 2010. The report by the restaurant owner that Mr. El Rida earns $800 per week is not accurate, except perhaps as it relates to the period of full time employment which existed about one year ago. Presently, Mr. El Rida continues in the other employment noted in the PSR and earns, on average, about $1000 a month.

### Guideline objection

Mr. El Rida was arrested by the NYPD on December 26, 2006 and charged with grand larceny and trademark counterfeiting. (PSR ¶¶ 39-41). A month later, he pleaded guilty to trademark counterfeiting, a misdemeanor, and was sentenced to a conditional discharge. *Id*. This instance of trafficking in counterfeit goods was not charged in the instant information or included in the government's sentencing sheet prepared for the guilty plea. The Probation Department views the conduct underlying the state court conviction as relevant to the instant offense "as it occurred in the same county, was in close temporal proximity, and included the same type of conduct as the instant offense." (PSR ¶ 11).

Relevant conduct includes "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3(a)(1). Where, as here, the offenses at issue may be grouped under U.S.S.G. § 3D1.2(d), the sentencing court is to consider "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG §1B1.3(a)(2). The phrase "same course of conduct" is not defined in the Guidelines. When determining what acts fall under the same course of conduct "the sentencing court is to consider such factors as the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts." *United States v. Santiago*, 906 F.2d 867, 872 (2d Cir. 1990).

Here, the offense of conviction, the sale of the counterfeit Viagra, is only superficially similar to the earlier possession of counterfeit sneakers prosecuted in state court. Though both involved the sale or possession of counterfeit goods, they are dissimilar in all other respects. The

sale of counterfeited prescription medication is more akin to narcotics trafficking than to the sale of counterfeited clothing. The fake pharmaceuticals do not require the storage space or sales outlets that clothing requires, instead they are sold, as in this case, discretely. Counterfeit clothing, once acquired, is sold in the open, in stores and markets. The non-prescribed sale of authentic Viagra is illegal, but not so the sale of designer t-shirts. In short, the business of selling inauthentic pharmaceuticals is completely different from the business of selling counterfeit clothing. This dissimilarity is evident in the instant case, where Mr. El Rida was payed to deliver the pills and played only a minor role in the crime; he played a completely different role in the counterfeit sneaker case.

Because the counterfeit sneaker case was prosecuted 4 years ago, was not charged in the information, and is unrelated to the counterfeit Viagra charge, it is not "relevant conduct" to the instant offense.

Pursuant to USSG §3D1.2(d), both counts charged in the information are to counted as one group. Thus, the guidelines should be calculated with the 8 level base offense level found at USSG §2B5.3(a) and with the aggregate amount of (intended) loss of $59,040, which calls for a 6 level enhancement. *See* USSG §3D1.3(b)(Indicating that where multiple counts are of the same general type, apply the guideline that produces the higher offense level.) The resulting level 14 should be reduced by 4 levels, 2 for acceptance of responsibility and 2 for minor role.

Because the 2006 state prosecution is not relevant conduct, it should be counted for criminal history purposes. Pursuant to USSG §4A1.1(c) and (d), 3 criminal history points are added for that conviction, placing Mr. El Rida in criminal history category II. The advisory sentencing range is 8-14 months.

## 18 U.S.C. § 3553(a)

As the Court knows, under 18 U.S.C. § 3553(a), it is required to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. Section 3553(a)(2) states that such purposes are:

1. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
2. to afford deterrence to criminal conduct;
3. to protect the public from further crimes of the defendant; and
4. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need

to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense *See* 18 U.S.C. § 3553(a)(1).

### The circumstances of the offense and the history of the offender

Mr. El Rida is 27 years old and was raised in poverty in Lebanon. When he was very young, his father immigrated to the United States. Mr. El Rida was left with his mother and siblings in Lebanon until he was 16, when his father arranged for him to immigrate to the United States. Mr. El Rida never attended school in the United States. Presently, Mr. El Rida works 3 jobs and uses the income to support himself and to assist his mother and his 6 year old son. Both his mother and son rely on his financial support and would be left in serious financial hardship if Mr. El Rida could not send money each month.

As noted above, Mr. El Rida has one prior conviction for trademark counterfeiting. As his brother notes, Mr. El Rida "was influenced by friends who had a negative impact on his life." (PSR ¶ 49.) Mr. El Rida, since his arrest, has worked hard to earn a legal living, works several jobs, and no longer associates with his previous friends.

Mr. El Rida has accepted responsibility for his part in the charged crimes and acknowledges the seriousness of his actions. It must be noted, however, that in regard to the Viagra sale, Mr. El Rida's role was to deliver the pills and accept the payment. The transaction was negotiated by and the pills were provided by Mr. Dogmosh. The instant offense was Mr. El Rida's only involvement with counterfeit pharmaceuticals. The counterfeit money orders found on Mr. El Rida when he was arrested had been given to him as payment and his intent, after learning that they were counterfeit, was to return them to the person from whom he had received them. Thus, Mr. El Rida knew that the money orders were fake, and that they would likely be used again by the person to whom he intended to return them, however, he did not intend to personally defraud anybody by using the money orders.

**United States v. Ali El Rida**
July 8, 2010

## Conclusion

In light of the circumstances of this case, Mr. El Rida's history, and the nature of his role in the crimes, a sentence of probation is appropriate.

Thank you for your attention to this matter.

Respectfully submitted,

Michael K. Schneider, Esq.
(718) 330-1161

cc:     Clerk of the Court [by ECF]
        Mr. Evan C. Williams, Esq. [by e-mail]
        Ms. Sindee J. Haasnoot, Senior United States Probation Officer
        Mr. Ali El Rida