**U.S. Department of Justice**

Criminal Division

---

F. #2008R00430            *Computer Crime & Intellectual Property Section*
*1301 New York Ave., Suite 600*
*Washington, D.C. 20530*
*PHONE: (202) 514-1026*
*FAX: (202) 514-6113*

April 4, 2011

BY ECF & FEDERAL EXPRESS

The Honorable Allyne R. Ross
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 10021

    Re: United States v. Ali El Rida
         Criminal Docket No. 08-555(ARR)

Dear Judge Ross:

    The government respectfully submits this sentencing memorandum in response to the defendant Ali El Rida's ("El Rida's") objections, proffered in his July 8, 2010 sentencing memorandum ("Def. Mem."), to the calculation of the advisory range of imprisonment under the United States Sentencing Guidelines (the "Guidelines") by the United States Department of Probation ("Probation"), set out in the Presentence Investigation Report ("PSR") dated April 29, 2010.

    As an initial matter, the government disagrees slightly with Probation's calculation of the Guidelines range, but not for the reasons cited by El Rida. While Probation found – properly, the government submits – that El Rida was entitled to a two-level mitigating role reduction, see PSR ¶ 9, this was omitted – inadvertently, it appears – from Probation's computation of the total offense level. See PSR ¶¶ 19 & 25. This would reduce the adjusted offense level for Count One from 22, see PSR ¶ 21, to 20, and correspondingly, the total offense level from 19, see PSR ¶ 35, to 17, resulting in an advisory range of imprisonment of 24-30 months, not 30-37, as Probation determined. See PSR ¶ 79. Aside from this, the government concurs with Probation's calculation of the Guidelines range.

    El Rida objects to Probation's determination that the events resulting in his December 29, 2008 conviction of Trademark Counterfeiting in the Third Degree in Queens, New York constitute conduct relevant to the instant offense. Probation contends that

the prior acts were relevant conduct because they: (i) were similar to the instant offense; and (ii) were close to the instant offense both geographically and temporally.  The government agrees with Probation because the defendant's prior acts were part of the same "course of conduct"[1] as the instant offense.  U.S.S.G. § 1B1.3(a)(2).

      While, as El Rida points out, "the phrase 'same course of conduct' is not defined in the [body of the] Guidelines," Def. Mem. at 2, the Sentencing Commission has proffered a definition:

> Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses.

U.S.S.G. § 1B1.3, Application Note 9(B).  In making this determination, factors to be considered are:

> ... [T]he degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.  When one of the above factors is absent, a stronger presence of at least one of the other factors is required.

Id.  The Second Circuit, even before the Sentencing Commission issued this definition in 1992, had held that relevant conduct included acts which were merely part of the same course of conduct, and explained similarly that the acts need not be "connected together" provided that they were part of "an

---

[1] While Probation never states explicitly, either in the PSR or the Addendum, that the prior offense is relevant because it was part of the same "course of conduct" as the instant offense, see U.S.S.G. § 1B1.3(a)(2), this appears to be the basis for its conclusion, since no evidence is cited that the prior and instant offenses shared any common factor, which would be necessary to deem them part of a "common scheme or plan."  Id.; see also id., Application Note 9(A).  Similarly, the government is aware of no evidence that the offenses were linked by a common factor, such as victim or accomplice, and therefore does not contend that they constituted parts of a "common scheme or plan."  Id.

identifiable 'behavior pattern' of specified criminal activity." United States v. Perdomo, 927 F.2d 111, 115 (2d Cir.) (quoting United States v. Santiago, 906 F.2d 867, 872 (2d Cir. 1990)).

Here, the prior offense, which involved both trafficking in counterfeit goods and the illicit possession of money orders, as did the instant offense, and which occurred in the same borough of New York City as the instant offense, less than a year earlier, clearly constituted conduct relevant to the instant offense. All three factors cited by the Sentencing Commission are present: similarity, regularity and temporal proximity.

El Rida's arguments to the contrary carry little weight. First, he contends that the sale of counterfeited prescription medication is "more akin to narcotics trafficking than to the sale of counterfeited clothing." Def. Mem. at 3. This is not true. Viagra®, while a prescription drug, is not even a controlled substance, let alone a narcotic drug. Moreover, the value of counterfeit Viagra® stems from the brand name, just as the value of counterfeit Nike® sneakers does. By contrast, so-called "generic" Viagra®, produced in foreign countries where the the Pfizer® Corporation has no patent and marketed over the Internet, often sells for a dollar or two a tablet, a fraction of the cost for genuine Viagra®.

Second, El Rida asserts that illicit pharmaceuticals, counterfeit and otherwise, are sold discreetly while counterfeit clothing is sold openly. Even if this were generally true – and a simple Google search using the search term "Viagra" suggests otherwise, generating hits for dozens and dozens of websites openly offering Viagra® and other prescription drugs in blatant violation of both the 2009 Ryan Haight Act and the Food Drug and Cosmetics Act – it is a distinction without a difference. The gravamen of both crimes – the core deceit on the consumer – is the same for pharmaceuticals as for clothing; the consumer is paying a premium for brand-name merchandise, and whether that merchandise is offered in a flea market or a café, the seller's crime is lying to the customer about its origin and manufacture.

Finally, El Rida contends that because his role was substantially larger in the prior offense than the instant one, it is not relevant conduct. If anything, this cuts in the opposite direction, making it more equitable to factor in prior conduct which admittedly has a substantial impact on the computation of the total offense level. Moreover, the Sentencing Commission lists "similarity of the offenses [emphasis added]," U.S.S.G. § 1B1.3, Application Note 9(B), not role in the

offenses, as the salient factor in identifying relevant conduct.

In sum, the government submits that El Rida's total offense level is 17, his criminal history category I, and the resulting advisory Guidelines range of imprisonment 24-30 months. The government concurs with Probation that the defendant's purchase of counterfeit Nike sneakers and possession of illicit money orders less than a year prior to the instant offense constitutes relevant conduct and should therefore be included in the computation of his total offense level instead of his criminal history category.  The government takes no position on the other issues raised by El Rida in his sentencing submission.

    Respectfully submitted,

    LORETTA E. LYNCH
    United States Attorney

By:   /S/ Evan C. Williams
    Evan C. Williams
    Trial Attorney
    U.S. Department of Justice
    (202) 307-0135

cc: Michael K. Schneider, Esq. (by e-mail)
    Senior U.S. Probation Officer
      Sindee J. Haasnoot (by e-mail)